Entered on Docket
November 22, 2011
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

The following constitutes
the order of the court. Signed November 22, 2011

_____
**Charles Novack**
**U.S. Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re CEDAR FUNDING, INC., <br><br> Debtor. | Case No. 08-52709-MM <br><br> Chapter 11 |
| R. TODD NEILSON, Trustee for Debtor, CEDAR FUNDING, INC., <br><br> Plaintiff, <br><br> vs. <br><br> E & F FINANCIAL SERVICES, INC., <br><br> Defendant. | Adversary No. 10-5157 <br><br><br> **MEMORANDUM DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

## INTRODUCTION

In this adversary proceeding, R. Todd Nielson, the Chapter 11 trustee of Cedar Funding, Inc.'s bankruptcy estate (the "Chapter 11 Trustee")[1], seeks to avoid and recover more than one million dollars in alleged fraudulent transfers purportedly made by the debtor to E & F Financial Services, Inc. ("E&F") during a four year period before the Cedar Funding Chapter 11 case was filed. The Chapter 11 Trustee

---

[1] Under the Chapter 11 Trustee's confirmed plan of reorganization, Russell Burbank serves as the plan administrator, and he is now the real party in interest. For ease of convenience, the court shall generically refer to the plaintiff as the "Chapter 11 Trustee."

seeks to recover under both Bankruptcy Code § 548 and California Civil Code §3439 *et seq*., the latter of which codifies California's version of the Uniform Fraudulent Transfer Act. E&F now seeks summary judgment in its favor, arguing that the debtor received reasonably equivalent value for its payments to E&F. For the reasons stated below, the court denies summary judgment, but grants partial summary adjudication under F.R.B.P. 7056(d) with regard to certain facts as set forth below.

## FACTS

The underlying transactional facts are undisputed. On January 14, 2000 Stil, Inc. ("Stil," a company unrelated to the debtor) borrowed $875,000.00 from Cushman Capital Corporation, and secured the loan with a first deed of trust against real property located at 72 Chaparral Road, Carmel Valley, California (the "Chaparral Property"). On that same day, Stil borrowed an additional $800,00.00 from "David Nilsen, dba Cedar Funding,"[2] which loan was secured by a second deed of trust directly junior to the Cushman Capital first deed of trust. In May 2002, E&F made a construction loan to Stil with a maximum principal amount of $2.4 million. Stil immediately used the E&F loan to satisfy the Cushman Capital loan in full, and it secured the E&F loan with a first deed of trust against the Chaparral Property. As part of this May 2002 refinance, Nilsen subordinated his January 2000 deed of trust to the E&F deed of trust, and loaned Stil an additional $300,000.00, which was secured by a third deed of trust against the Chaparral Property.

Stil defaulted on its E&F and Cedar Funding obligations in early 2004, and E&F recorded a notice of default in March 2004, which was swiftly followed by Cedar Funding's recordation of its own notice of default under the third deed of trust in early April 2004. On May 28, 2004, Cedar Funding cured Stil's

---

[2] The court takes judicial notice that David Nilsen incorporated Cedar Funding, Inc. on May 13, 2003, slightly more than a year before the transfers at issue began. The Chapter 11 Trustee asserted during oral argument that Nilsen was the alter ego of Cedar Funding, Inc. To this judge's knowledge, this is the first time that the Chapter 11 Trustee has made this assertion. While this argument may or may not affect the ultimate outcome of this adversary proceeding, it is not relevant to this court's ruling. Accordingly, for ease of reference, the court will refer to both Nilsen and the underlying corporate Chapter 11 debtor as "Cedar Funding."

2

E & F default by paying $120,370.95 to E&F[3] ( E&F thereafter rescinded its notice of default).  Stil did not cure its Cedar Funding default, however, and Cedar Funding recorded a notice of sale on July 21, 2004, conducted a trustee's sale in August 2004, and purchased the Chaparral Property at its trustee's sale. While the August 2004 trustee's deed conveyed title to "David Nilsen, dba Cedar Funding," Cedar Funding transferred title on September 17, 2004 by grant deed to Accustom Development LLC.

Accustom Development thereafter made regular, monthly payments to E&F under the E&F note from funds in the "Cedar Funding, Inc. Escrow Trust Account" or "Cedar Funding, Escrow Account." The evidence indicates that Accustom Development paid E&F $21,000.00/month from July 2004 to March 2008. No one disputes that the funds used to make these payments were Cedar Funding property. These monthly payments, when added to the $120,370.95 cure payment, total $1,044,370.95[4]. The Trustee seeks to avoid the Payments as fraudulent conveyances.

Although unstated by the parties in their memoranda of law, the court takes judicial notice of the extensive evidence presented in the underlying Chapter 11 case and the many other Cedar Funding adversary proceedings that demonstrate that Nielsen was operating a Ponzi scheme during most, if not all of the time in question. Neilson's operations are well explained in several decisions issued by this court, and those decisions are incorporate herein for the sole purpose of establishing the mechanics of the Ponzi scheme. *See e.g., Rollins v. Nielson (In re Cedar Funding, Inc.)*, 408 B.R. 299 (Bankr. N.D. Cal. 2009), and *Nielson v. Aiken (In re Cedar Funding, Inc.)*, 2009 WL 2849122 (Bankr. N.D. Cal. Jul. 20, 2009).   The court also takes judicial notice of the "Stipulation For Turnover Of Estate Assets And To Dismiss Adversary Proceeding" filed in this adversary proceeding, which determined that the Chaparral Property was Cedar Funding property.

---

[3] Cedar Funding filed its Chapter 11 bankruptcy on May 26, 2008. Accordingly, the chapter 11Trustee alleges that the May 28th reinstatement payment is the first avoidable transfer.

[4] The reinstatement and monthly payments shall be referred to as the "Payments."

3

## PROCEDURE ON SUMMARY JUDGMENT

The summary judgment standard under F.R.B.P. 7056 is well settled. Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Only disputes "over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). This court's duty is not to weigh the evidence and decide the truth of the allegations, but to determine whether there is a genuine issue for trial. *Id*. at 249. Where the non-moving party bears the burden of proof at trial "[s]ummary judgment is warranted if the nonmovant fails to 'make a showing sufficient to establish the existence of an element essential to [his] case. *Nebraska v. Wyoming*, 507 U.S. 584, 590, 113 S. Ct. 1689, 124 L. Ed. 2d 317 (1993). The moving party can meet its burden by pointing out the absence of evidence from the non-moving party," and it "need not disprove the other party's case." *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 987(9th Cir. 2006). Accordingly, the "nonmoving party must come forward with specific facts showing there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed. 2d 538 (1986).

## LEGAL ANALYSIS

The Chapter 11 Trustee alleges four claims for relief to establish that the Payments are avoidable fraudulent conveyances. The Chapter 11 Trustee asserts parallel "actual fraud" claims for relief under Bankruptcy Code § 548(a)(1)(A) and California Civil Code §3439.04(a)(1), claiming that the Payments are avoidable because they were made with the actual intent to hinder, delay and defraud creditors. Bankruptcy Code § 548(c) and California Civil Code § 3439.08(a) provide affirmative defenses to E&F against these claims for relief. Section 548(c) provides that a transferee that takes "for value and in good faith has a lien on or may retain any interest transferred or may

4

enforce any obligation incurred, as the case may be, to the extend that such transferee ... gave value to the debtor in exchange for such transfer...." Similarly, California Civil Code § 3439.08(a) provides that "A transfer ... is not voidable under paragraph (1) of subdivision (a) of Section 3439.04, against a person who took in good faith and for a reasonably equivalent value ...."

In turn, the "constructive fraud" claims for relief under Bankruptcy Code § 548(a)(1)(B) and California Civil Code § 3439(a)(2) require that the Chapter 11 Trustee prove that E&F did not provide reasonably equivalent value. These code sections generally provide that a transfer is avoidable as a fraudulent conveyance where the debtor received less than reasonably equivalent value in exchange for the transfer, and that the debtor was (1) insolvent when the transfer was made or became insolvent as a result of the transfer, (2) engaged in a business for which any remaining property was an unreasonably small amount of capital, or (3) intended to incur or believed that it would incur debt beyond its ability to pay as they matured.

While there are a series of tangled issues in this adversary proceeding, E&F's primary ground for summary judgment is that it provided reasonably equivalent value in exchange for the Payments, and that it accepted the Payments in good faith. E&F argues that it would have foreclosed on the Chaparral Property if the Payments were not made, and that the Payments therefore allowed Cedar Funding to retain the Chaparral Property. E&F also argues that it accepted these payments in good faith. E&F maintains that its Stil loan was an arms length transaction, that it knew nothing of Cedar Funding's Ponzi scheme while it was receiving the Payments, and that there are no facts indicating that it should have known or been put on notice of Cedar Funding's fraudulent conduct. It further contends that it was required to accept the Payments under California Civil Code § 2924c(a)(1), and that it should not, as a matter of public policy, be penalized for accepting the Payments.

The Chapter 11 Trustee does not dispute that E&F accepted the Payments in good faith, and the court therefore grants partial summary judgment on this issue. While "good faith" is not susceptible to an exact definition, the standard is an objective one, requiring the court to examine what the transferee knew or should have known when the transfer was made. *In re Agric. Research & Tech. Group, Inc.*, 916 F.2d 528, 535-36 (9th Cir. 1990). The declaration of Alexander Eisner,

5

E&F's vice president, details the history of the Stil loan and the Payments. His declaration establishes that E&F accepted the Payments in good faith, and the Trustee does not challenge these assertions.

E&F also has established that the Payments provided some value to Cedar Funding, as they prevented E&F from foreclosing on its deed of trust. This conclusion alone is insufficient, however, to grant E&F's motion for summary judgment. Bankruptcy Code §548(a)(2) and California Civil Code §3439.04(a)(2) require that this court conclude not just that "value" was given, but that such value was "reasonably equivalent value." Moreover, this determination must be made for each Payment when it was made.

As a preliminary matter, Bankruptcy Code § 548(d)(2) defines value to mean "property or satisfaction of securing of a present or antecedent debt of the debtor...." While neither Cedar Funding nor Accustom Development was a signatory to the E&F loan, a claim against a debtor includes a claim against property of the debtor. See Bankruptcy Code § 102(2). As stated above, property held by Accustom Development has been deemed to be Cedar Funding property. Moreover, the term "value" "includes 'any benefit'" to the debtor, whether it is "direct or indirect." as value. *In re Image Masters, Inc.*, 421 B.R. 164, 178, ft. 14 (Bankr. E.D.Pa. 2009). Thus, there is no question of fact that the Payments - which were interest only payments - provided "value" by maintaining the loan balance and preventing foreclosure.

A finding of "reasonably equivalent value" is an intensively factual determination. Although this term is not defined in the Bankruptcy Code or in California Civil Code §3439 et. seq., it does not require a dollar-for-dollar exchange. *In re R.M.L.*, 92 F.3d 139, 145 (3rd Cir. 1999). The Third Circuit succinctly described "reasonably equivalent value" as follows: "The touchstone is whether the transaction conferred realizable commercial value on the debtor reasonably equivalent to the commercial value of the assets transferred. Thus, when the debtor is a going concern and its realizable going concern after the transaction is equal to or exceeds its going concern value before the transaction, reasonably equivalent value has been received." *Mellon Bank, N.A. v. Metro Communications, Inc.*, 945 F.2d 635, 647 (3rd Cir. 1991). The court must analyze all of the

6

circumstances surrounding the transfer in question, and its analysis must be determined from the perspective of the bankruptcy estate's creditors, not from the defendant's perspective. See *In re 3DFX Interactive, Inc.*, 389 B.R. 842, 862-863 (Bankr. N.D.Cal. 2008).

Significant questions of fact exist regarding whether E&F provided reasonably equivalent value in exchange for the Payments. E&F contends that the Payments prevented its trustee's sale, but there is scant evidence regarding the value of the Chaparral Property when the Payments were made, and equally scant evidence regarding the equity that may have been preserved as a result.[5] Nor was any evidence presented regarding what other value Cedar Funding may have received.[6] The only evidence of value that E&F submitted was a statement of dubious admissibility by Alexander Eisner (E&F's vice president) that in February 2002, the Chaparral Property, "as completed," would be worth $4.5 million - 4.75 million. No evidence was provided regarding (a) whether the Chaparral Property was commercial or residential, (b) the state of its construction when each Payment made, and (c) its value when each Payment was made and the resulting equity that was allegedly preserved. Absent such information, the court cannot grant summary judgment on the constructive fraud claims under Bankruptcy Code § 548(a)(2) and California Civil Code § 3439(b). Again, it is important to note that Cedar Funding was not a signatory to the E&F note, and the Payments did not provide a dollar for dollar reduction on any contract or promissory note to which it was a party. Instead, the Payments possibly maintained equity in the Chaparral Property, and it is this equity that may constitute reasonably equivalent value.[7] The court simply cannot determine the value given as a

---

[5] While payments on fully secured obligations are not fraudulent transfers, as they are deemed to have been in exchange for reasonably equivalent value (see, e.g., *In re First Alliance Mortgage Co.*, 471 F.3d 977, 1008 (9th Cir. 2006), questions of fact exist regarding the Chaparral Property's value when the Payments were made.

[6] Both direct and indirect benefits may be evaluated in determining whether the debtor received reasonably equivalent value. See *In re Image Masters, Inc.*, 421 B.R. 164, 178, ft. 14 (Bankr. E.D.Pa. 2009).

[7] These facts distinguish this case from *In re Image Masters, Inc.*, 421 B.R. 164 (Bankr. E.D.Pa. 2009). In that Ponzi scheme case, the Image Masters debtors defrauded investors

7

matter of law based on the facts before it. This court is obligated to draw all reasonable inferences in favor of the Chapter 11 Trustee, and this requirement, along with the paucity of evidence, requires that this court deny the motion on the constructive fraud claims for relief.

The court finds similar questions of fact regarding the claims under Bankruptcy Code §548(a)(2) and California Civil Code §3439.04(b). "Reasonably equivalent value" is not an element of these claims for relief but instead forms an affirmative defense under Bankruptcy Code § 523(c) and California Civil Code § 3439.08(a)(1). These code sections allow E&F to retain "any interest transferred" to the extent that value was given. They thus require E&F to demonstrate that Cedar Funding received some financially quantifiable value in exchange for each Payment, and to quantify that value. As stated above, E&F has not quantified this amount, and thus reasonable questions of material fact exist regarding the extent of the value received by Cedar Funding.

The court also rejects E&F's policy argument that California Civil Code § 2924c(a)(1) insulates it from liability. E&F's argument misconstrues the focus of fraudulent conveyances. Fraudulent conveyance law focuses on the intent of the transferor and whether the transferor received

---

by convincing them to refinance their residences for more that the amount due on their existing deeds of trust, and to turn over the excess refinance proceeds to Image Masters. In exchange, Image Masters (i) provided them with notes and deeds of trust with better terms, (ii) instructed the investors to make their monthly mortgage payments (on the Image Masters-created notes) to Image Masters, and (iii) informed the investors that Image Masters would pay the (real) refinance notes with the monthly payments that they received and make up the difference between their refinance notes and the Image Masters notes by investing the excess refinance proceeds (or simply using those proceeds to pay the monthly differential). The Chapter 7 Trustee sued the banks to recover the mortgage payments as fraudulent conveyances. The Bankruptcy Court dismissed the complaint on the ground, *inter alia*, that Image Masters received reasonably equivalent value for each mortgage payment. The Bankruptcy Court noted that even though Image Masters did not owe the banks anything, "Image Masters received in return an equal dollar-for-dollar reduction in its liability to the homeowners under the Image Masters Notes and Mortgages. I reiterate that this is so because: (1) Image Masters had contractually agreed with the homeowners to pay the regular monthly amounts due on the conventional mortgages with [the banks]; and (2) each transfer to a [bank] constituted a disbursal to or for the benefit of the homeowner [on the contract between the homeowner and Image Masters]. *Id*. at 179.

8

reasonably equivalent value in return for its transfers.  E&F's policy argument is at odds with the fundamental purpose of fraudulent conveyance law.

The court therefore denies E&F's motion for summary judgment.  The court finds, however, that no triable question of fact exists regarding the element of good faith under Bankruptcy Code § 548(c) and California Civil Code § 3439.08(a), and finds that E&F has established this element for purposes of trial.

IT IS SO ORDERED.

**** END OF ORDER ****

A.P. No. 10-5157

**COURT SERVICE LIST**

Cecily A. Dumas
FRIEDMAN, DUMAS AND SPRINGWATER
33 New Montgomery St., Suite 290
San Francisco, CA 94105

Cheryl Rouse
LAW OFFICES OF ROUSE AND BAHLERT
345 Franklin Street
San Francisco, CA 94102